UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA HAYES, as Executor of<br>the Estate of Sherilyn Hayes,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>TOWN OF DALTON, JEFFREY E. COE,<br>Dalton Chief of Police, in his individual and<br>official capacities, JOHN MARLEY, Dalton<br>Police Officer, in his individual and official<br>capacities, FRANK M. SPETH, III, Dalton<br>Dispatcher, in his individual and official<br>capacities, DYLAN BENCIVENGA,<br>Dalton Police Officer, in his individual and<br>official capacities, TOWN OF PERU, KYLE<br>NUTTING, Peru Police Officer, in his<br>individual and official capacities,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:21-cv-30055-KAR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER REGARDING MOTIONS FOR JUDGMENT ON THE
PLEADINGS BY DEFENDANTS JEFFREY E. COE, TOWN OF DALTON, FRANK M.
SPETH, III, AND DYLAN BENCIVENGA
(Dkt. Nos. 71 & 73)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

In the aftermath of her daughter Sherilyn Hayes's (Sherilyn) suicide, Plaintiff Patricia

Hayes (Plaintiff) filed suit seeking damages from the Town of Dalton and members of its police

department, as well as from Sherilyn's fiancé, Kyle Nutting, who was employed as a police

officer by the Town of Peru, and the Town of Peru (collectively, Defendants).  Plaintiff alleges

that Defendants were notified that Sherilyn intended to kill herself and their failure to intervene

to try to prevent her death violated Sherilyn's civil rights and various state laws.  Now pending

1

before the court are two motions for judgment on the pleadings, one filed individually by

Defendant Dalton police chief Jeffrey E. Coe on all counts of the complaint (Dkt. No. 71) and a

second filed on behalf of Defendants the Town of Dalton (Dalton or Town), Dalton police

dispatcher Frank M. Speth, III, and Dalton police officer Dylan Bencivenga on Counts I, III, IV,

V, and IX of the complaint (Dkt. No. 73).  The parties have consented to this court's jurisdiction

(Dkt. No. 45).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons set forth below, the

court GRANTS both motions.

      II.    BACKGROUND

     Because the court is ruling on motions for judgment on the pleadings, the facts are recited

in the light most favorable to Plaintiff, the non-moving party.  *See Doe v. Brown Univ.*, 896 F.3d

127, 130 (1st Cir. 2018); *AIG Prop. Cas. Co. v. Crosby*, 892 F.3d 25, 27 (1st Cir. 2018).  Tyler

Hamilton called the Dalton police department's communications center on November 23, 2019,

at approximately 6:16 P.M. to report that his buddy (Nutting) and Nutting's girlfriend (Sherilyn)

just got into an argument concerning Nutting's alleged infidelity (Dkt. No. 1 ¶¶ 9, 11, 16, 20).

Hamilton notified Dalton police dispatcher Defendant Frank M. Speth, III, that Nutting was a

Peru police officer who had left his North Street residence and was having dinner with the Peru

police chief, but Sherilyn remained at the apartment that she shared with Nutting (Dkt. No. 1 ¶¶

12, 14, 20, 23, 24).  Hamilton indicated that Nutting had been calling him and texting him saying

that he was worried about Sherilyn who had threatened suicide during their argument (Dkt. No. 1

¶¶ 18, 21).  Hamilton requested a wellness check and urged the police to hurry because Sherilyn

had failed to respond when Hamilton knocked at her door (Dkt. No. 1 ¶¶ 15, 16, 17, 20).  After

Hamilton reaffirmed that Sherilyn said she was going to harm herself, Speth told Hamilton that

he would dispatch officers to her residence (Dkt. No. 1 ¶¶ 22, 23).

At 6:18 P.M., about two minutes after Hamilton's call came into the communications center, Speth dispatched Dalton police officers, Defendants Marley and Bencivenga, to Sherilyn's and Nutting's North Street residence (Dkt. No. 1 ¶¶ 24, 25).  Speth's broadcast identified the call as a domestic and asked the responding officers to call the communications center for additional information (Dkt. No. 1 ¶ 26).  Speth later indicated that he did not want to provide all of the information about a domestic dispute involving a police officer over an open radio channel (Dkt. No. 1 ¶ 28).

Marley told Speth that he was at the Dalton Police Department and would speak with Speth in the communications center (Dkt. No. 1 ¶ 27).  During his conversations with Speth, Marley allegedly learned that Nutting was a Peru police officer and that Hamilton had requested a well-being check because Sherilyn had threatened suicide (Dkt. No. 1 ¶¶ 30, 31).[1]  According to the Dalton police department's rules and regulations, any call for service that included a suicide threat required an immediate response (Dkt. No. 1 ¶ 32).

At 6:21 P.M., Marley called Bencivenga over the radio and instructed him to just stand by near Sherilyn's apartment (Dkt. No. 1 ¶ 34).  Marley indicated that he was going to make a phone call and would update Bencivenga in a minute (Dkt. No. 1 ¶ 34).

Marley attempted to reach Nutting by phone (Dkt. No. 1 ¶ 39).  At 6:24 P.M., Marley called Peru police chief Jeffrey Henault in an attempt to determine Nutting's whereabouts (Dkt. No. 1 ¶ 40).  According to Marley, Nutting told him that, when he and Sherilyn argued, she said something about wanting to hurt herself, but Nutting did not think she was going to hurt herself and there was no need for police to conduct a well-being check based on her statements (Dkt.

---

[1] Marley's initial police report about the incident allegedly omitted the information that Speth told him about Sherilyn's suicide threat (Dkt. No. 1 ¶ 44).

No. 1 ¶¶ 42, 46).  Marley stated that Nutting told him that Sherilyn was just upset (Dkt. No. 1 ¶ 42).[2]  Later, Marley allegedly admitted that Nutting told him that Nutting believed Sherilyn wanted to die (Dkt. No. 1 ¶ 48).

Based on Nutting's statement that Nutting did not think a well-being check was necessary, Marley neither responded to Sherilyn's apartment nor directed Bencivenga to respond (Dkt. No. 1 ¶ 52).  Instead, Marley called Hamilton at 6:29 P.M. (Dkt. No. 1 ¶ 53).  Hamilton told Marley that he had knocked on Sherilyn's door for about twenty minutes, but she had not answered (Dkt. No. 1 ¶ 54).  When Marley asked Hamilton whether Hamilton was asking for police officers to go to Sherilyn's residence and speak to her to make sure she was okay, Hamilton said that he did not want to interfere with Nutting's career (Dkt. No. 1 ¶ 56).  Marley continued:

> [Nutting's] not calling and asking us to do this.  So you're the caller.  So for us to go there and either force our way into that home or to take her into custody, we need someone to tell us that that's what they're asking us to do. . . .  [I]t just . . . doesn't work that way with us.  So we need you to INAUDIBLE you want us to go there and check on her or you're going to use some other means yourself to do that or we're going to go there and she doesn't answer the door, we're going to either break the door down or we're going to get . . . a key and go in and talk to her.[3]

(Dkt. No. 1 ¶ 56).  Hamilton agreed to return to Sherilyn's residence (Dkt. No. 1 ¶ 56).

After Marley's conversation with Hamilton, Marley called Bencivenga and told him to remain outside the apartment complex (Dkt. No. 1 ¶ 62).  Neither Marley nor Bencivenga

---

[2] Marley's initial report of the incident failed to mention his phone conversation with Nutting (Dkt. No. 1 ¶ 43).

[3] According to the complaint, members of the Dalton police department knew that there was a key lock box at Sherilyn's North Street complex which held a master key to all apartments (Dkt. No. 1 ¶ 54).

responded to Sherilyn's residence at that time (Dkt. No. 1 ¶ 63).  Although the Dalton police had

not responded, Speth closed out Hamilton's call for service at 6:50 P.M. (Dkt. No. 1 ¶ 69).

At 6:40 P.M., Hamilton informed Marley that he and Nutting were going to the apartment

to check on Sherilyn (Dkt. No. 1 ¶¶ 64, 65).  Hamilton and Nutting discovered Sherilyn at

approximately 7:00 P.M. and called the Dalton police to request emergency assistance for a

person who had taken her life (Dkt. No. 1 ¶¶ 70, 71).

An anonymous letter to a member of the Dalton Select Board about Dalton police

officers' lack of response to Hamilton's service call prompted the town to hire Tewksbury's

former police chief to conduct an investigation (Dkt. No. 1 ¶¶ 76, 80).  Plaintiff alleges that

Marley tried to intimidate other officers to prevent them from cooperating with the investigation

(Dkt. No. 1 ¶¶ 80, 81).

The Dalton Select Board voted to terminate Marley's employment as a police officer in or

about May 2020 (Dkt. No. 1 ¶ 77).  The board's decision was affirmed by an arbitrator in April

2021 (Dkt. No. 1 ¶ 78).[4]

Plaintiff's complaint, which she filed on May 7, 2021, made the following claims against

the Town of Dalton, Dalton police personnel, Nutting, and the Town of Peru:  denial of due

process, in violation of 42 U.S.C. § 1983 (Count I); denial of equal protection, in violation of 42

U.S.C. § 1983 (Count II); "failure to protect/violation of 'special duty'/violation of civil rights"

---

[4] A copy of the arbitrator's decision in the Dalton Police Patrol Officers Union's appeal of
Marley's termination is attached to the complaint as Exhibit 1 (Dkt. No. 1-1).  While "[a] copy of
a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes,"
Fed. R. Civ. P. 10(c), "[a] court may take judicial notice of an opinion issued in a prior
proceeding . . . 'only to establish the existence of the opinion, not for the truth of the facts
asserted in the opinion.'"  *Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 185 (E.D.N.Y.
2006) (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir.
2006)).

(Count III); conspiracy by state actor, in violation of 42 U.S.C. §§ 1985(2) and (3) (Count IV); failure to prevent the § 1985 violation (Count V); gross negligence (Count VI); liability under Mass. Gen. Laws ch. 258 against the Town of Dalton (Count VII); wrongful death, in violation of Mass. Gen. Laws ch. 229, § 2A (Count VIII); and conspiracy, in violation of 42 U.S.C. § 1983 (Count IX).[5]   The court allowed the motion to dismiss filed by Dalton police officer John Marley in his individual capacity with respect to Counts I, III, IV, V, VI, VIII, and IX, and denied the motion with respect to Count II.   The court also allowed the motions to dismiss filed by Nutting in his official capacity and the Town of Peru as to all counts.   The court allowed Nutting's motion to dismiss in his individual capacity as to the federal claims in Counts I, II, III, IV, V, and IX, and denied it as to the state law tort claims in Counts VI and VIII (Dkt. No. 59).

Now before the court is Coe's motion for judgment on the pleadings with respect to all claims (Dkt. No. 71).   The Town of Dalton, Speth, and Bencivenga have moved for judgment on the pleadings with respect to the federal law claims in Counts I, III, IV, V, and IX (Dkt. No. 73). Plaintiff has opposed the motions (Dkt. Nos. 76, 81).   The motions will be discussed separately.

III.   STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings "'is treated much like a Rule 12(b)(6) motion to dismiss.'"   *Villeneuve v. Avon Prods., Inc.*, 919 F.3d 40, 43 n.2 (1st Cir. 2019) (quoting *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)).   "'[T]he [complaint's] well-pleaded facts and the reasonable inferences therefrom'" are viewed "'in the

---

[5] Count III ("failure to protect/violation of 'special duty'/violation of civil rights") and Count IV (§ 1985 conspiracy by a state actor) are not directed at a particular Defendant or Defendants. Counts I, V, VI, and IX name all of the individual Defendants.   Count II (equal protection) and Count VIII (wrongful death) are brought against "All Defendants" without naming individual defendants (Dkt. No. 1).

6

light most favorable to the nonmovant (here, the plaintiff).'" *Brown Univ.*, 896 F.3d at 130

(quoting *Kando v. R.I. State Bd. of Elections,* 880 F.3d 53, 58 (1st Cir. 2018)).  Judgment on the

pleadings will be granted "'if the complaint fails to state facts sufficient to establish a "claim to

relief that is plausible on its face."'"  *Id.* (quoting *Gray v. Evercore Restructuring L.L.C.*, 544

F.3d 320, 324 (1st Cir. 2008)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v.

Twombley,* 550 U.S. 544, 556 (2007)).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Id.* (quoting *Twombley,* 550 U.S. at 556).  "In determining whether a complaint

crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience

and common sense.'"  *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013)

(alteration in original) (quoting *Iqbal,* 556 U.S. at 679).

    IV.    ANALYSIS

    A.    **The Town's, Speth's, and Bencivenga's Motion for Judgment on
the Pleadings**

        1.    <u>Claims Under 42 U.S.C. § 1983 (Counts I and III)</u>

"A claim under section 1983 has two essential elements: (1) the conduct complained of

must have been committed under color of state law, and (2) the conduct must have worked a

denial of rights that are protected by the Constitution or laws of the United States."  *Gueits-

Colón v. De Jesús*, 177 F. Supp. 2d 128, 134 (D.P.R. 2001) (citing *Martinez v. Colon,* 54 F.3d

980, 984 (1st Cir. 1995)).  There is no dispute that Speth and Bencivenga were acting under color

of state law on November 23, 2019.  As to the second element, Plaintiff alleges a substantive due

process violation based on the state-created danger doctrine (Dkt. No. 1 at 1 and ¶¶ 83-88, 96-99; Dkt. No. 81 at 9-11).

> a.    *Speth and Bencivenga did not violate Sherilyn's right to substantive due process.*

Plaintiff alleges that Speth's and Bencivenga's failure to comply with the department's policy requiring an immediate response to a suicide threat was an affirmative act that increased the likelihood that she would harm herself (Dkt. No. 81 at 9-11).  The court disagrees for the reasons stated in its dismissal of Counts I and III against Marley.  *See Hayes v. Town of Dalton,* Case No. 3:21-cv-30055-KAR, 2022 WL 488466, at *5-7 (D. Mass. Feb. 17, 2022).

To assert a viable state-created danger claim, Plaintiff had to allege "that a state actor or state actors affirmatively acted to create or enhance a danger to [Sherilyn]." *Irish v. Fowler,* 979 F.3d 65, 75 (1st Cir. 2020), *cert. denied,* 142 S. Ct. 74 (2021).  "'[F]ailure to act is not an affirmative act under the state-created danger theory.'" *Wilson v. Gregory,* 3 F.4th 844, 858 (6th Cir. 2021) (quoting *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir. 2003)).  *See Doe v. Rosa,* 795 F.3d 429, 439 (4th Cir. 2015) ("to establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission."); *Hasenfus v. LaJeuness,* 175 F.3d 68, 73 (1st Cir. 1999); *Doe v. Round Valley Unified Sch. Dist.,* 873 F. Supp. 2d 1124, 1133 (D. Ariz. 2012); *Bennett ex rel. Irvine v. City of Philadelphia*, Civil Action Nos. 03-5685, 05-0833, 2006 WL 1371189, at *10 (E.D. Pa. May 17, 2006), *aff'd,* 499 F.3d 281 (3d Cir. 2007).

The court is not persuaded by Plaintiff's attempt to convert the officers' alleged failure to comply with the department's policy into an affirmative act.  Because the line between an affirmative act and an omission may be difficult to draw, courts in other jurisdictions have

analyzed whether an act allegedly committed by a government official changed the status quo.  If there was no departure from the status quo, there was no affirmative act.  *See L.R. v. Sch. Dist. of Philadelphia,* 836 F.3d 235, 243 (3d Cir. 2016) ("Rather than approach this inquiry as a choice between an act and an omission, we find it useful to first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo."); *Stiles ex rel. D.S. v. Grainger Cty.,* 819 F.3d 834, 854 (6th Cir. 2016) ("The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it.").

Plaintiff has alleged no facts from which it could be inferred that the officers' actions or inactions changed the status quo inside Sherilyn's apartment in a way that made her less safe. "[N]othing in the complaint suggests even in a conclusory way that [Sherilyn's] self-destructive tendency was intensified by state action, or that anything done or omitted by the police weakened any instinct for self-preservation and made [her] more dangerous to [her]self." *Coscia v. Town of Pembroke,* 659 F.3d 37, 40 (1st Cir. 2011).  Courts in this and other jurisdictions have declined to find a violation of a decedent's substantive due process rights when law enforcement officers did not directly and intentionally provoke an individual's suicide.  *See, e.g., id.; Reeves v. Town of Hingham,* Civil No. 19-11474-LTS, 2020 WL 759370, at *3 (D. Mass. Feb. 14, 2020) (plaintiffs "could not maintain a section 1983 claim for law enforcement officials' failure to prevent [their son's] tragic suicide."); *see also Cutlip v. City of Toledo,* 488 F. App'x 107, 115-16 & n.9 (6th Cir. 2012) ("[A]lthough a number of courts have considered the state-created danger doctrine within the context of suicide, the primary cases that have found or seriously entertained liability have involved the suicide of minors where school officials or police were in some way

responsible.  Nearly all cases that considered the state-created-danger doctrine in the context of suicide have rejected liability on the merits . . . .") (citation omitted) (collecting cases); *Henderson v. City of Philadelphia,* No CIV. A. 98-3861, 1999 WL 482305, at *12 (E.D. Pa. July 12, 1999) ("In the absence of an act by the officers that changed the volatile circumstances which already surrounded [the decedent], they cannot be liable [for his suicide].").

For the foregoing reasons, the court will dismiss Counts I and III as to Speth and Bencivenga in their individual capacities.

> b.      *The Town of Dalton is not liable for violating Sherilyn's substantive due process rights.*

Although the complaint does not specify whether Counts I and III are brought against the Dalton police officers in their individual or official capacities or both, the complaint names all individual defendants in their individual and official capacities (Dkt. No. 1 at 1, 12, 14).  "'A suit against a public official in his official capacity is a suit against the government entity' of which the official is an agent."  *Stuart v. City of Gloucester,* Civil Action No. 18-cv-11877-ADB, 2019 WL 3082830, at *13 (D. Mass. July 15, 2019) (quoting *Rosaura Bldg. Corp. v. Municipality of Mayaguez,* 778 F.3d 55, 62 (1st Cir. 2015)).  *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).  Thus, the claims against Coe, Marley, Speth, and Bencivenga in their official capacities are, in effect, claims against the Town of Dalton.

"In order for a municipality to be held liable for civil rights violations under 42 U.S.C. § 1983, a plaintiff must show that 'the municipality itself cause[d] the constitutional violation at issue.  Respondeat superior or vicarious liability will not attach under § 1983.'" *Stuart v. Town of Framingham*, 301 F. Supp. 3d 234, 242 (D. Mass. 2018) (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978).  A municipality may be held liable only if the plaintiff alleges

and proves a constitutional deprivation that arose from a policy or practice.  *See Roe v. Lincoln-Sudbury Reg'l Sch. Dist.*, Civil Action No. 18-10792-FDS, 2021 WL 1132256, at *40 (D. Mass. Mar. 24, 2021).

> In addition to establishing a constitutional deprivation, a plaintiff must show (1) that the entity had a custom, policy, or practice of failing to investigate, discipline, supervise, or train its employees; (2) that the custom, policy, or practice was such that it demonstrated a "deliberate indifference" to the rights of those [citizens] with whom its employees came into contact; and (3) that the custom, policy, or practice was the direct cause of the alleged constitutional violation.

*Id. (quoting DiRico v. City of Quincy*, 404 F.3d 464, 468-69 (1st Cir. 2005) (internal quotations omitted)); *see also City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Monell*, 436 U.S. at 690-92.

Here, Plaintiff has not adequately alleged that Marley, Speth, and Bencivenga violated Sherilyn's substantive due process rights.  Because "a municipality cannot be held liable unless its agent actually violated the victim's constitutional rights," *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998), the Town is entitled to judgment on the pleadings as to Counts I and III. [6] *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of [any] individual police officer, the fact that the departmental regulations might have authorized [unconstitutional action] is quite beside the point."); *DiRico,* 404 F.3d at 469 ("a municipality cannot be held liable under § 1983 for failure to train absent an underlying constitutional violation by one of its officers") (citing *Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir. 1996)); *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005) ("The finding that [the individual officer] violated [the plaintiff's] constitutional rights is

---

[6] Because judgement will enter in favor of Coe on Counts I and III for reasons set forth below, judgment on the pleadings will enter in favor of the Town as to those claims against Coe in his official capacity.

necessary for any finding that the City is liable,  and thus causally, any basis for municipal

liability must run through [the officer's] actions.") (citations omitted)).

        2.     <u>Plaintiff did not respond to Defendants' motion for judgment on</u>
<u>the pleadings as to the conspiracy claims in Counts IV and V.</u>

In allowing Marley's motion to dismiss Counts IV and V, the court held that the

complaint did not allege facts showing that Sherilyn was "'a member of any defined class, let

alone one defined by invidious criteria'" as is required for a viable conspiracy claim under 42

U.S.C. § 1985(2) and (3).  *Hayes,* 2022 WL 488466, at \*10 (quoting *Burbank v. Town of*

*Hubbardston,* 146 F. Supp. 3d 402, 405 (D. Mass. 2015)).  Because Plaintiff has not sufficiently

alleged a basis for liability on the part of Speth and Bencivenga under § 1985, Plaintiff has no

claim against them under § 1986.  *See Maymí v. P. R. Ports Auth.*, 515 F.3d 20, 31 (1st Cir.

2008).  Furthermore, because the events occurred on November 23, 2019 and the suit was filed

on May 7, 2021, an action under § 1986 is barred by the one year statute of limitations.  *See* 42

U.S.C. § 1986.

Plaintiff has not responded to Defendants' argument that judgment on the pleadings

should enter for Speth, Bencivenga, and the Town on Counts IV and V (Dkt. No. 81 at 11-14).

Consequently, Plaintiff has waived those claims and judgment will enter in favor of Speth,

Bencivenga, and the Town.  *See Trindade v. Grove Servs., Inc.*, Civil Action No. 19-cv-10717-

ADB, 2020 WL 6566509, at \*4 (D. Mass. Nov. 9, 2020) (quoting *Mahoney v. Found. Med., Inc.*,

342 F. Supp. 3d 206, 217 (D. Mass. 2018)); *see also Peterson v. E. Boston Sav. Bank*, Civil

Action No. 17-11776-GAO, 2018 WL 4696746, at \*2 (D. Mass. Sept. 29, 2018) (plaintiff's

"failure to oppose this argument amounts to a waiver of any objection to it."); *Perkins v. City of*

*Attleboro*, 969 F. Supp. 2d 158, 177 (D. Mass. 2013) (a claim was waived where plaintiff failed

to address it in his opposition).

> 3.     <u>The complaint does not adequately allege that Speth and</u>
> <u>Bencivenga conspired to violate 42 U.S.C. § 1983 (Count IX)</u>.
>
> a.     *The complaint does not allege a plausible claim of conspiracy*
> *against Speth and Bencivenga in their individual capacities.*

Count IX alleges that Defendants Marley, Speth, and Bencivenga conspired "to deprive the Plaintiff of evidence her [sic] procedural and substantive constitutional rights and are jointly liable" (Dkt. No. 1 ¶ 120).  Judgment will enter in Defendants' favor on Count IX because the complaint lacks the specific factual allegations necessary to support a viable conspiracy claim.

"A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'"  *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (quoting *Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir. 1988)). In order to present an adequate conspiracy claim under § 1983, there must be allegations of "'(1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Williams v. City of Boston*, Civil Action No. 10-10131-PBS, 2013 WL 1336584, *11 (D. Mass. March 14, 2013) (alteration in original) (quoting *Lumpkin v. Lucey,* Civil Action No. 09-11921-RGS, 2010 WL 1794400, at *5 (D. Mass. May 4, 2010)).  Although a conspiracy may be a "'matter of inference,'" *Estate of Bennett*, 548 F.3d at 178 (quoting *Earle,* 850 F.2d at 844), "a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions."  *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)).

In support of the conspiracy claim, Plaintiff alleges that Marley and "others involved in the incident" intentionally omitted important information about the events of November 23, 2019, from their incident reports (Dkt. No. 1 ¶¶ 73, 74).  Plaintiff identifies specific omissions from Marley's report (Dkt. No. 1 ¶¶ 43, 44).  However, she has not named other police department personnel who purportedly conspired with Marley by misrepresenting facts in their reports and she has not described alleged omissions by others.  "Although a court can infer that an agreement was made when direct evidence is lacking, such an inference must still be based on sufficient and plausible factual allegations."  *Brown v. Cumberland Cty.*, 557 F. Supp. 3d 169, 188 (D. Me. 2021).  The generic allegations in the complaint do not plausibly state a claim that there was a meeting of the minds among Dalton police department personnel to deprive Sherilyn of her constitutional right to equal protection.  *See Slotnick*, 560 F.2d at 33 ("complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts.); *Felix v. Town of Randolph*, Civil Action No. 12-10997-GAO, 2013 WL 3830840, at *4 (D. Mass. July 22, 2013) (dismissing claims where "the [c]omplaint provide[d] no specifics as to the identity of the conspirators and any actions taken in furtherance of the conspiracy, let alone whether there was a meeting of the minds between the alleged conspirators.").

Moreover, to the extent Plaintiff alleges that Defendants engaged in a conspiracy to cover up the events surrounding Sherilyn's suicide by falsifying police reports after her death (Dkt. No. 1 ¶¶ 73, 74), the complaint fails to state a viable claim.  "In order for an agreement to be actionable under § 1983 . . . there must be 'an actual deprivation' of a constitutional right." *Correia v. Town of Framingham*, 969 F. Supp. 2d 89, 97-98 (D. Mass. 2013) (quoting *Earle*, 850

F.2d at 844).  Plaintiff has not identified any separate constitutional violation that resulted from the alleged conspiracy to cover up the police department's misconduct.

For the foregoing reasons, Speth and Bencivenga are entitled to judgment in their individual capacities as to Count IX.

> b.    *The Town is not liable for conspiracy.*

To the extent the complaint alleges that Speth, Bencivenga, and Marley were acting in their official capacities when they conspired, Count IX will also be dismissed as to the Town because a suit against employees in their official capacities is a suit against the municipality, *see Stuart,* 2019 WL 3082830, at *13, and a municipality cannot conspire with itself.  *See Wentworth Precious Metals, LLC v. City of Everett,* No. Civ.A. 11-10909-DPW, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) ("When these employees acted in the course of their employment, they acted on behalf of the City of Everett, and a conspiracy of one fails to state a claim.  '[A]n entity cannot conspire with itself.'") (alteration in original) (citation omitted) (quoting *Platten v. HG Bermuda Exempted, Ltd.,* 437 F.3d 118, 130-31 (1st Cir. 2008)); *see also Felix,* 2013 WL 3830840, at *4.

> **B.    Coe's Motion for Judgment on the Pleadings**

Plaintiff's claims against Coe are based on alleged violations of Sherilyn's constitutional rights by officers under his supervision.

> 1.    Federal Claims

> a.    *Supervisory Liability*

"The criteria for establishing supervisory liability are 'exceptionally stringent.'" *Fernandes v. Bouley*, CIVIL ACTION NO. 20-11612-GAO, 2021 WL 4691602, at *7 (D. Mass. Aug. 2, 2021), *adopted sub nom. Fernandes v. Sena*, CIVIL ACTION NO. 20-11612-GAO,

2021 WL 4452311 (D. Mass. Sept. 29, 2021) (quoting *Justiniano v. Walker*, 986 F.3d 11, 20 (1st

Cir. 2021)).  A supervisor's liability cannot be based on a respondeat superior theory.  *See*

*Justiniano,* 986 F.3d at 20.  Rather, it must be based on the supervisor's "own acts and

omissions."  *Figueroa v. Aponte-Roque,* 864 F.2d 947, 953 (1st Cir. 1989).  When, as here, the

supervisor did not participate in the challenged conduct, the plaintiff must plausibly allege:

> First, [that a] subordinate's behavior . . . caused a constitutional violation, or
> abridged the plaintiff's constitutional rights.  *Guadalupe–Báez v. Pesquera*, 819
> F.3d 509, 514 (1st Cir. 2016); *Welch v. Ciampa*, 542 F.3d 927, 937 (1st Cir.
> 2008).  Second, the [allegations] must show that there is "an 'affirmative link'
> between the street-level misconduct and the action, or inaction, of supervisory
> officials," *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989)
> (quoting *Woodley v. Town of Nantucket*, 645 F. Supp. 1365, 1372 (D. Mass.
> 1986)), such as "supervisory encouragement, condonation, or acquiescence or
> gross negligence amounting to deliberate indifference."  *Guadalupe–Báez*, 819
> F.3d at 515 (quoting *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)).

*Winfield v. Town of Andover*, 305 F. Supp. 3d 286, 296-97 (D. Mass. 2018).  To show that a

supervisor acted with deliberate indifference, the complaint must allege "'(1) [a] grave risk of

harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take

easily available measures to address the risk.'"  *Penate v. Hanchett*, 944 F.3d 358, 367 (1st Cir.

2019) (quoting *Camilo-Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir. 1998)).

"'[D]eliberate indifference alone does not equate with supervisory liability.'"  *Guadalupe-*

*Báez,* 819 F.3d at 515 (alteration in original) (quoting *Figueroa-Torres v. Toledo-Dávila*, 232

F.3d 270, 279 (1st Cir. 2000)).  "Causation remains an essential element, and the causal link

between a supervisor's conduct and the constitutional violation must be solid."  *Id.*

(citing *Ramírez–Lluveras v. Rivera-Merced,* 759 F.3d 10, 19 (1st Cir. 2014)).  It requires proof

that the supervisor's action or inaction "led inexorably to the constitutional violation."  *Hegarty v.*

*Somerset Cty.,* 53 F.3d 1367, 1380 (1st Cir. 1985)  "At bottom, 'the test for liability draws on the

long-established principle that *notice* is a salient consideration in determining the existence

of supervisory liability.'"  *Montrond v. Spencer*, Civil Action No. 17-10505-ADB, 2021 WL

5040318, at *2 (D. Mass. Oct. 29, 2021) (quoting *Penate,* 944 F.3d at 367).

      b.    *Coe is not liable for alleged civil rights violations under 42 U.S.C.*
              *§ 1983 (Counts I and III).*

For the reasons set forth above, Plaintiff has not adequately alleged a state-created danger

claim against Marley, Speth, or Bencivenga.  With no underlying constitutional violation by the

officers, neither Coe nor the Town can be liable.  *See Guadalupe-Báez,* 819 F.3d at 514;

*Ramírez-Lluveras*, 759 F.3d at 19 (for supervisory liability, "the subordinate's behavior must

have caused a constitutional violation").  Accordingly, Coe is entitled to judgment on Counts I

and III.[7]

      c.    *Plaintiff has not adequately pled a supervisory liability claim against Coe*
              *for an alleged Equal Protection violation (Count II).*

The complaint identifies Coe as the Dalton police chief on November 23, 2019 (Dkt. No.

1 ¶ 4).  Coe's name does not appear anywhere else in the complaint (Dkt. No. 1).  Although the

complaint states a viable claim against Marley, Speth, and Bencivenga for depriving Sherilyn of

her right to equal protection by withholding assistance because Nutting was a police officer,[8] *see*

*Guadalupe-Báez,* 819 F.3d at 514; *Hayes,* 2022 WL 488466, at *8, Coe is entitled to judgment

on the pleadings as to Count II because Plaintiff has not pled any facts to show that Coe was

personally responsible for the actions or inactions that allegedly violated Sherilyn's rights.  *See*

*Gutierrez-Rodriguez,* 882 F.2d at 562.  "The Supreme Court has instructed that in '§ 1983 suits, a

plaintiff must plead that each Government-official defendant, *through the official's own*

_____

[7] To the extent Counts I and III were brought against Coe in his official capacity, the Town's
motion for judgment on the pleadings as against Coe on Counts I and III is granted.

[8] The court previously denied Marley's motion to dismiss Count II and Speth and Bencivenga
have not moved for judgment on Count II (Dkt. Nos. 59, 73).

*individual actions,* has violated the constitution.'" *Allen v. Town of E. Longmeadow,* Case No. 17-cv-30041-MGM, 2018 WL 1152098, at *7 (D. Mass. Feb. 9, 2018), *adopted by* No. 17-cv-30041-MGM, 2018 WL 1141361 (D. Mass. Mar. 2, 2018) (quoting *Iqbal,* 556 U.S. at 676). Plaintiff has not done this.

The complaint does not allege that Coe formulated a policy or engaged in a custom that led to the constitutional violation, *see Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 582 (1st Cir. 1994), or that he failed to train his subordinates. *See, e.g., Justiniano,* 986 F.3d at 20. In her opposition to Coe's motion, Plaintiff argues that Coe may be liable because he failed to investigate claims of officer misconduct, to find that involved officers violated departmental policies, and to impose discipline (Dkt. No. 76 at 10). Plaintiff's argument cannot succeed where the complaint contains no allegations about Coe's inadequate supervision and discipline of the involved officers (Dkt. No. 1). *See Martinez Diaz v. Unknown Officers of P.R. Police Dep't,* 600 F. Supp. 2d 318, 324 (D.P.R. 2008) (dismissal was warranted "[s]ince [p]laintiff has not shown any factual evidence that [the supervisor] encouraged, condoned or acquiesced [in] the behavior of the . . . police officers . . . ."). *Compare Pacheco-Pacheco v. Toledo,* Civil No. 09-2121 (JAG), 2011 WL 5977337, at *3 (D.P.R. Nov. 29, 2011) (the complaint's allegations of "rampant misconduct by police officers" and of "a systemic failure by [the supervisors] to address the use of excessive force" were sufficient to survive a motion to dismiss because they permitted the inference that the defendant ignored prior incidents of misconduct). The complaint also lacks any allegations purporting to link Coe's deficiencies as a supervisor and disciplinarian to the alleged violations of Sherilyn's rights. Such allegations are necessary to state a plausible supervisory liability claim. *See Wilmot v. Tracey,* 938 F. Supp. 2d 116, 142 (D. Mass. 2013)

(dismissal was required where the complaint lacked allegations of fact to support an affirmative link between the supervisor's conduct and the constitutional violation).

The requirement that a claim be plausible on its face does not set a high bar for surviving a motion to dismiss.  *See Iqbal,* 556 U.S. at 678 (quoting *Twombley,* 550 U.S. at 570).  *See also Rodríguez-Reys v. Molina Rodríguez,* 711 F.3d 49, 56 (1st Cir. 2013) ("A high degree of factual specificity is not required at the pleading stage.").  However, the bare allegation that Coe was the police chief, without more, falls short of stating a plausible claim for supervisory liability.  *See Winfield*, 305 F. Supp. 3d at 296 ("It is well established that supervisory liability 'cannot rest solely on a defendant's position of authority.'") (quoting *Ramírez–Lluveras*, 759 F.3d at 19); *Colon-Andino v. Toledo-Davila*, 634 F. Supp. 2d 220, 232–33 (D.P.R. 2009) ("Despite the fact that these titles indicate that the individuals holding them may have acted as supervisors . . . , their names appear nowhere else in the complaint, therefore no facts are alleged linking them to the alleged violations.").

The court recognizes that "'"some latitude may be appropriate" in applying the plausibility standard,'" *Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016) (quoting *García–Catalán v. United States,* 734 F.3d 100, 104 (1st Cir. 2013)), because discovery might reveal additional information that could support a supervisory liability claim against Coe. "Nonetheless, the Court dismisses [Count II] against [Coe] given the paucity of the allegations against [him] in the complaint, but with the understanding that the dismissal is without prejudice pending further discovery." *Correia v. Town of Westport*, Civil Action No. 1:16-cv-12408-ADB, 2017 WL 3940931, at *5 (D. Mass. Sept. 7, 2017).

> d.    *Plaintiff did not respond to Coe's motion on the conspiracy claims (Counts IV, V, and IX).*

Plaintiff has not responded to Coe's motion for judgment on the pleadings as to the federal conspiracy claims that were brought against him in his individual and official capacities (Dkt. No. 76). Coe's motion is, therefore, granted as to Counts IV, V, and IX.[9] *See Trindade,* 2020 WL 6566509, at \*4.

       2.   <u>State Law Claims</u>

Coe moves for judgment on the state law claims for gross negligence (Count VI) and wrongful death (Count VIII) on the ground that he is immune from individual liability under the Massachusetts Tort Claims Act (MTCA), Mass. Gen. Laws ch. 258 (Dkt. No. 72 at 16). Plaintiff agrees (Dkt. No. 76 at 14). *See Maraj v. Massachusetts,* 836 F. Supp. 2d 17, 31 (D. Mass. 2011) ("[T]he MTCA categorically protects public employees acting within the scope of their employment from liability for 'personal injury or death' caused by their individual negligence.") (quoting Mass. Gen. Laws ch. 258, § 2). Judgment will enter in Coe's favor as to Counts VI and VIII.

      V.   Conclusion

For the foregoing reasons, Coe's motion for judgment on the pleadings (Dkt. No. 71) is granted as to Counts I, III, IV, V, VI, VIII, and IX and granted without prejudice as to Count II. The Town of Dalton's, Speth's, and Bencivenga's motion (Dkt. No. 73) is granted as to Counts I, III, IV, V, and IX.

It is so ordered.

Dated: November 23, 2022                 /s/ Katherine A. Robertson
                                   KATHERINE A. ROBERTSON
                                   United States Magistrate Judge

---

[9] The Town's motion is also granted as to the conspiracy claims against Coe in his official capacity in Counts IV, V, and IX. *See Wentworth Precious Metals, LLC,* 2013 WL 441094, at \*4.