UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICIA HAYES, as Executor of the Estate of Sherilyn Hayes, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TOWN OF DALTON, JOHN MARLEY, Dalton Police Officer, in his individual and official capacities, and FRANK M. SPETH, III, Dalton Dispatcher, in his individual and official capacities, | ) ) ) ) ) ) | Case No. 3:21-cv-30055-KAR |
| Defendants. | ) ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS FRANK SPETH, III'S, AND
THE TOWN OF DALTON'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 126)

ROBERTSON, U.S.M.J.

Following the suicide of her daughter Sherilyn Hayes ("Sherilyn"),[1] Plaintiff Patricia

Hayes ("Plaintiff") filed suit seeking damages from the Town of Dalton ("the Town"), Dalton

police officer John Marley ("Marley"), and Dalton police dispatcher, Frank M. Speth, III

("Speth") (the Town and Speth are referred to herein collectively as "Defendants"). Plaintiff

alleges that Defendants were notified that Sherilyn intended to kill herself and that their failure to

respond to the call violated Sherilyn's rights under federal and state law. This Memorandum and

Order is addressed to Plaintiff's claims against Speth and the Town, both of whom have moved

for summary judgment as to all of Plaintiff's claims (Dkt. No. 126). The parties have consented

to this court's jurisdiction (Dkt. No. 45). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the

---

[1]The court uses Sherilyn's first name to avoid confusion. No disrespect is intended.

reasons set forth below, the court GRANTS Defendants' summary judgment motion as to all counts.

I.    RELEVANT FACTUAL BACKGROUND[2]

On November 23, 2019 at approximately 6:16 PM, Speth, a civilian dispatcher, answered a call Tyler Hamilton made to the Dalton Police Department's ("DPD") non-emergency number (DSOF ¶¶ 1, 2; Pl. Resp. DSOF ¶¶ 1, 2; Dkt. No. 128-5 at 4).  Hamilton reported that Sherilyn had threatened to kill herself during an argument with her fiancé, Kyle Nutting, who was Hamilton's friend (DSOF ¶¶ 3, 4; Pl. Resp. DSOF ¶¶ 3, 4).  In response to Speth's question about whether Sherilyn had weapons, Hamilton told Speth that Nutting was a Peru police officer, and had weapons at the house, but Sherilyn did not have access to them (DSOF ¶ 4; Pl. Resp. DSOF ¶ 4; Dkt. No. 128-2 at 2-3).  Hamilton said that Nutting had left their residence and was having dinner with the Peru police chief (DSOF ¶¶ 3, 4; Pl. Resp. DSOF ¶¶ 3, 4).  Speth stated, "We'll send the officers over there" and ended the call (DSOF ¶ 4; Pl. Resp. DSOF ¶ 4; Dkt. No. 128-2 at 3).

At approximately 6:18 PM, Speth broadcast the call over the department's radio system and dispatched Dalton police cruiser number 7, which was assigned to reserve police officer Dylan Bencivenga, and cruiser number 9, which was assigned to Marley (DSOF ¶¶ 5, 6; Pl. Resp. DSOF ¶¶ 5, 6).  Speth identified the call as a "domestic" and asked the officers to call the communications center for additional information (DSOF ¶ 7; Pl. Resp. DSOF ¶ 7; Dkt. No. 140-

---

[2] Unless otherwise indicated, the facts are drawn from Defendant Speth's and the Town of Dalton's Statement of Material Facts in Support of Their Motion for Summary Judgment ("DSOF") (Dkt. No. 128); and Plaintiff's Response to Defendants Speth's and the Town of Dalton's Statement of Material Facts in Support of Their Motion for Summary Judgment ("Pl. Resp. DSOF") (Dkt. No. 140).  Citations to page numbers are to the numbers assigned by the court's ECF system.

1 at 48).  Speth does not dispute that the reason he asked that one of the officers call him for additional information was because he had been told that Nutting was a police officer (Dkt No. 140-1 at 23, 176-78, 180)**.[3]**

Marley told Speth that he was at the Dalton police station and would speak to him in person (DSOF ¶ 8; Pl. Resp. DSOF ¶ 8).  When Marley arrived some two minutes later, Speth told Marley that Hamilton had asked for a well-being check because Sherilyn had threatened to kill herself (DSOF ¶ 9; Pl. Resp. DSOF ¶ 9; Dkt. No. 128-1 ¶ 34).  Speth also told Marley that Sherilyn's fiancé, Nutting, was a police officer (Pl. Resp. DSOF ¶ 9).

Hamilton called the Dalton police department's dispatch center again at 6:40 PM (DSOF ¶ 12; Pl. Resp. DSOF ¶ 12).  Speth transferred the call to Marley who spoke to Hamilton (DSOF ¶ 13; Pl. Resp. DSOF ¶ 13).  At 6:50 PM, Speth closed Hamilton's call for service after checking its status with Marley (DSOF ¶ 14; Pl. Resp. DSOF ¶ 14).  At approximately 7:05 PM, Nutting returned to Sherilyn's home and found she had killed herself (Dkt. No. 128-6 at 3).

The DPD's guidelines concerning responses to calls for services provide, in part, that "[t]he manner in which officers respond to calls for services must vary according to the nature and severity of the call [as] necessary to ensure the maximum safety of the general public and the officers themselves" and acknowledge the possibility of circumstances that may justify altering normal procedures (Dkt. No. 140-2 at 1).  So far as appears from the record, the Town does not have a separate policy or set of guidelines governing the responsibilities of its dispatchers.

---

[3] Speth made this statement to Alfred Donovan, an independent investigator who was hired by the Dalton Select Board to review the November 23, 2019 call for service to Sherilyn's apartment (Dkt. No. 140-1 at 1, 4).  Speth's statements to Donovan are admissible against Speth as statements of a party opponent if offered by Plaintiff.  *See* Fed. R. Evid. 801(d)(2)(A).

Plaintiff asserts claims against Defendants pursuant to 42 U.S.C. § 1983 for allegedly violating Sherilyn's constitutional right to equal protection (Count II) (Compl. ¶¶ 89-94). Plaintiff further alleges that Speth was grossly negligent (Count VI) (Compl. ¶¶106-07).  As to the Town, Plaintiff brings claims under the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, for negligence and gross negligence (Count VII) (Compl. ¶¶ 108-16) and wrongful death (Count VIII) (Compl. ¶¶ 117-18).

II.    STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' when a rational factfinder could resolve it either direction." *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).  "A fact is 'material' when its (non)existence could change a case's outcome." *Id.* (citing *Borges*, 605 F.3d at 5).  The record is viewed in the light most favorable to the non-moving party, and reasonable inferences are drawn in the non-moving party's favor.  *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

If the moving party meets its burden of identifying the absence of a genuine issue of material fact, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Rule 56 "'mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"

*Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon)*, 922 F.3d 13, 20 (1st Cir. 2019)

(alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322).

III.    ANALYSIS

A.    Denial of Equal Protection (Count II)

1.    Claim Against Speth

Plaintiff argues that Speth violated Sherilyn's constitutional right to equal protection by

treating her differently because her fiancé was a police officer (Dkt. No. 139 at 3-14).  Although

Speth has invoked his right to qualified immunity, the court resolves Plaintiff's equal protection

claim without reaching the qualified immunity question because, based on the undisputed facts,

no reasonable jury could find that Speth violated Sherilyn's rights under the Equal Protection

Clause of the Fourteenth Amendment.  *See Robinson v. Cook*, 863 F. Supp. 2d 49, 62 (D. Mass.

2012).

While it is "clearly establishe[d] that the state does not have a constitutional duty to

protect its citizens from private violence," *Soto v. Flores*, 103 F.3d 1056, 1063 (1st Cir. 1997)

(citing *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 197 (1989)), it is also

well-established that a state is not entitled to "deny its protective services to certain disfavored

minorities without violating the Equal Protection Clause."  *DeShaney*, 489 U.S. at 197 n.3.

"Law enforcement officers therefore may not selectively deny protective services based on

'invidious classifications such as race, gender, and religion.'"  *Noka v. Town of Charlestown*,

524 F. Supp. 3d 9, 13 (D.R.I. 2021) (quoting *Pariseau v. City of Brockton*, 135 F. Supp. 2d 257,

262-63 (D. Mass. 2001)); *see also Hayden v. Grayson*, 134 F.3d 449, 452, 453 n.3 (1st Cir.

1998).  Here, Plaintiff does not claim that Sherilyn was denied protective services based on

membership in a class of disfavored persons.  Rather, her claim is that Speth violated Sherilyn's

5

right to equal protection by treating the call for services to her apartment differently than he treated other calls for services because her fiancé was a law enforcement officer.  Because Plaintiff does not claim to be a member of a disfavored class of persons to whom Speth provided less protection, Plaintiff advances what is known as a "class-of-one" equal protection claim.

"As the Supreme Court has recognized, a plaintiff can bring an equal protection claim as a 'class of one' even where the plaintiff does 'not allege membership in a class or group.'" *Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 130 (1st Cir. 2023) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  "In a class-of-one claim, the plaintiff must show that 'she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Olech*, 528 U.S. at 564).  To succeed on a class-of-one equal protection claim, a plaintiff "bear[s] the burden of identifying comparators who are 'similarly situated in all respects relevant to the challenged government action.'" *McCoy v. Town of Pittsfield, NH*, 59 F.4th 497, 507 (1st Cir. 2023) (quoting *Gianfrancesco v. Town of Wrentham,* 712 F.3d 634, 640 (1st Cir. 2013)) (granting summary judgment to the defendant on an equal protection claim in a land use restriction case).  Further, "in determining whether the differential treatment withstands a rational basis [scrutiny], courts examine whether the defendants' conduct was 'motivated by malicious or bad faith intent to injure.'" *N. End. Chamber of Commerce v. City of Boston*, Civil No. 24-10039-LTS, 2024 WL 5197557, at *8 (D. Mass. Dec. 20, 2024), *appeal docketed*, No. 25-1063 (1st Cir. Jan. 17, 2025) (quoting *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 35 (1st Cir. 2008)).  Plaintiff's claim that Speth treated Plaintiff differently in violation of her right to equal protection cannot succeed.

      a.    Plaintiff has not Shown the Absence of a Rational Basis for Speth's Actions, Nor has she Shown an Intent to Injure

To the extent it finds any support in the record, Plaintiff's equal protection claim against Speth is based on a very limited set of acts. Plaintiff claims that Speth delayed the police response to Sherilyn's apartment – briefly – by asking that an officer call him so he could provide more information to the responding officers and that he admittedly did so because Nutting was a police officer (Dkt. No. 140-1 at 23, 176-78, 180). When Marley stopped by the dispatch office, Speth told him that Sherilyn had threatened to kill herself, that her fiancé's last name was Nutting, and that he was a police officer (DSOF ¶ 9; Pl. Resp. DSOF ¶ 9; Dkt. No. 140-1 ¶ 52).

"'Under rational basis scrutiny, a classification will withstand constitutional challenge as long as it is rationally related to a legitimate state interest and is neither arbitrary, unreasonable, nor irrational.'" *D'Angelo v. N.H. Sup. Ct.*, 740 F.3d 802, 806 (1st Cir. 2014) (citation omitted). "[A] classification 'must be upheld against equal protection challenge if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Heller v. Doe*, 509 U.S. 312, 320 (1993) (emphasis added) (citation omitted). The DPD guidelines on responding to calls for service acknowledge that none of the procedures set forth therein "will preclude the possibility of circumstances, which will alter our normal and expected reactions" (Dkt. No. 140-2 at 1). This provision affords Town employees involved in responding to calls for protective services the discretion to take reasonable steps in connection with arranging a response to a call for services.

Speth briefly delayed the DPD's response to Hamilton's call for services by asking for a call back. That brief delay to protect the confidentiality of sensitive information has a rational basis in the law. Speth decided not to disclose the address and identity information of a law enforcement officer likely to have firearms in his apartment over a dispatch system to which

members of the public might have been listening.  *See Commonwealth v. Seino*, 96 N.E.3d 149,

154 (Mass. 2018) (the defendant was observed listening to a police scanner being broadcast by a

public access channel); *Commonwealth v. Damiano*, 828 N.E.2d 510, 512-13 (Mass. 2005)

(ruling on the admissibility of the contents of a private call intercepted by a private citizen who

was listening to a police scanner).  Massachusetts law acknowledges that such information

should remain private if possible.

> In Massachusetts, the public records law provides, in pertinent part, that:

> The commissioner of the department of criminal justice information services, the
> department of criminal justice information services and its agents, servants, and
> attorneys including the keeper of records of the firearms bureau of said
> department, or any licensing authority . . . shall not disclose any records divulging
> or tending to divulge the names and addresses of persons who own or possess
> firearms and ammunition therefor . . . .

> The home addresses, personal email address and home telephone number of law
> enforcement . . . shall not be public records . . . and shall not be disclosed.

Mass. Gen. Laws 66, §10B.  These exceptions to the public records law are aimed at protecting

public safety and the physical safety of police officers.  *Cf. Ferreira v. City of East Providence*,

568 F. Supp. 2d 197, 215 (D.R.I. 2008) (citing *Adams v. City of Fremont*, 68 Cal. App. 4th 243,

272 (Cal. Ct. App. 1998)).  A reasonable jury could find that Speth asked for a call back rather

than announcing over a dispatch channel that the call for services was for a police officer's

apartment because he wanted to avoid the risk that such sensitive information would be heard by

members of the public.  Thus, Plaintiff has failed to show that Speth's action lacked a rational

basis in the law.  *See Heller,* 509 U.S. at 320.

As to any intent by Speth to cause injury to Sherilyn, it is undisputed that he told

Hamilton at the outset that he would dispatch officers to Sherilyn and Nutting's apartment,

indicating a lack of intention to treat her differently than others.  A reasonable jury could not find

that a delay of some two minutes so Speth could speak by phone or in person with the responding officers to convey sensitive information lacked any justification based on his public duties and responsibilities, that Speth deliberately sought to impede the officers' response to Sherilyn's apartment, or that he acted out of an improper personal motive. *See Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 899 (7th Cir. 2012) (en banc) (per curiam) (discussing the standard for a class-of-one equal protection claim based on a law enforcement officer's allegedly different treatment and stating that a plaintiff "must [at a minimum] plead and prove *intentional discriminatory treatment* that *lacks any justification based on public duties* and that there be some *improper personal motive* for the discriminatory treatment.").

      b.     Plaintiff has not Identified Anyone Similarly Situated and Treated Differently

Plaintiff has also failed to make a threshold showing of a comparator who was similarly situated to Sherilyn "in all respects relevant to the challenged government action," but who was treated differently. *Gianfrancesco,* 712 F.3d at 639-40. To meet this obligation, Plaintiff relies on the testimony of the Town's Rule 30(b)(6) witness, Dalton police chief Deanna Strout, who testified that the incident involving Sherilyn was the only time during her twenty-five-year tenure as a DPD officer when there was a call for services based on a threat of self-harm and officers did not immediately respond to the scene (Pl. Resp. DSOF ¶ 17). In essence, this is an argument that Hamilton's call for services was treated differently than all other calls for services for individuals who had threatened suicide. Chief Strout, however, testified about the responses of on-duty police officers who were dispatched in response to calls for services. Plaintiff has not identified any instance on which a jury could rely to find that Speth, in his role as a dispatcher, treated the call for services on Sherilyn's behalf differently than he treated calls for services for other individuals who threated suicide. *See SBT Holdings*, *LLC,* 547 F.3d at 34 ("To determine

whether two or more entities are 'similarly situated,' we ask 'whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'") (quoting *Barrington Cove Ltd. P'ship v. R.I. Housing & Mortg. Fin. Corp.,* 246 F.3d 1, 8 (1st Cir. 2001)).  The lack of comparators is fatal to Plaintiff's case.  *See Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (recognizing that "an exact correlation need not exist between a plaintiff's situation and that of others in order to make a 'similarly situated' comparison," but allowing summary judgment where plaintiff failed to identify specific instances where the plaintiff was treated differently from other clients with similar mental health problems).

"[A]n equal protection claim plaintiff must ultimately prevail on each of the three . . . . prongs of [her] burden to obtain relief . . . ."  *Priolo v. Town of Kingston*, 839 F. Supp. 2d 454, 463 (D. Mass. 2012) (citations omitted).  Because Plaintiff has not identified evidence showing that Speth's actions lacked a rational basis in law or were motivated by an improper personal purpose, and because the evidence does not establish that he treated Hamilton's call differently than he treated other calls for services, no jury could reasonably find that Speth violated Sherilyn's constitutional right to equal protection.  Because there are no genuine disputes of material fact concerning Plaintiff's class-of-one equal protection claim, Speth is entitled to summary judgment on Count II.

2.      Claim Against the Town !

The Town argues that it is entitled to summary judgment on Count II based on Speth's and Marley's alleged denial of Sherilyn's constitutional right to equal protection because Plaintiff failed to present evidence showing a constitutional deprivation that arose from the Town's policy or practice as is required to prevail on a § 1983 claim against a municipality

(Compl. ¶¶ 89-92; Dkt. No. 126; Dkt. No. 127 at 11-12).  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Roe v. Lincoln-Sudbury Reg'l Sch. Dist.*, Civil Action No. 18-10792-FDS, 2021 WL 1132256, at *40 (D. Mass. Mar. 24, 2021).  Plaintiff has not responded to the Town's argument (Dkt. No. 139).  This failure is, on its own, a sufficient reason to grant the Town's summary judgment motion on this claim  *See Eck v. Neal,* Civil Action No. 1:14-cv-13693-ADB, 2017 WL 4364171, at *6 n.5 (D. Mass. Sept. 29, 2017) (granting summary judgment based on the plaintiff's failure to respond to defendant's argument) (citing *Mahmoud v. Jacques,* No. 2:14-cv-255-JHR, 2016 WL 1734076, at *7 (D. Me. Apr. 29, 2016)).

So far as appears from the record, Plaintiff's claim would, in any event, fail.  "[A]lthough a municipality may not be held liable under a theory of *respondeat superior* for an employee's constitutional violation, it may be held liable when 'execution of [the municipality's] policy or custom . . . inflicts the injury' and is the 'moving force' behind the employee's constitutional violation."  *Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016) (second and third alterations in original) (quoting *Monell*, 436 U.S. at 694).  Speth's conduct provides no basis for municipal liability because he did not violate Sherilyn's constitutional right to equal protection.  *See Gianfrancesco*, 712 F.3d at 640 n.4 (citing *Robinson v. Cook,* 706 F.3d 25, 38 (1st Cir. 2013)). While this court has held that Marley may have done so, there is no evidence of an unlawful policy or practice by the Town.  Chief Strout testified that Sherilyn's case was the only instance when officers did not immediately respond to a call about a threat of suicide.  There is no evidence that DPD officers failed to provide protective services in responding to any other call or situation where a suicidal individual was affianced to a law enforcement officer.  "[I]t is extremely difficult to sustain [municipal liability] based on a single incident of misconduct." *Sonia v. Town of Brookline,* 914 F. Supp. 2d 36, 46–47 (D. Mass. 2012).  Barring unusual

circumstances, which Plaintiff has not identified here, a single occurrence does not constitute a policy or practice that would support liability under *Monell*.

For the foregoing reasons, the Town is entitled to summary judgment on Count II.

      B.    <u>State Law Claims</u>

Plaintiff brings claims of gross negligence or recklessness against Speth in his individual capacity (Count VI) (Compl. ¶¶ 106-107), negligence and gross negligence against the Town (Count VII) (Compl. ¶¶ 108-116), and wrongful death against the Town (Count VIII) (Compl. ¶¶ 117-118). Speth and the Town argue that they are shielded from liability by the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 ("MTCA"). Their arguments are persuasive.

           1.    Count VI: Claim of gross negligence or recklessness against Speth
                   in his individual capacity

Although Count VI is captioned "gross negligence," Plaintiff alleges that Speth is individually liable for Sherilyn's death because he "acted in a manner so reckless . . . as to demonstrate substantial lack of concern as to whether injury or death would occur and, as such, are [sic] not protected by governmental immunity" (Compl. ¶ 107). Speth argues that he is immune from personal liability under the MTCA because he was acting within the scope of his employment on November 23, 2019 (Dkt. No. 127 at 13).

"[Section] 2 of the MTCA immunizes [a public employee] from personal liability for negligence or gross negligence" or reckless conduct committed within the scope of the employee's employment. *Correia v. Town of Westport*, Civil Action No. 1:16-cv-12408-ADB, 2017 WL 3940931, at *9 (D. Mass. Sept. 7, 2017) (citing *McNamara v. Honeyman*, 546 N.E.2d 139, 141 (Mass. 1989)). *See Cox v. City of Boston*, 734 F. Supp. 3d 173, 182 n.11 (D. Mass. 2024) (quoting *Schenker v. Binns*, 466 N.E.2d 131, 131 (Mass. App. Ct. 1984) (citing *Molinaro v. Town of Northbridge,* 643 N.E.2d 1043, 1044 (Mass. 1995))). There is no evidence in the

record that Speth took any action outside of the scope of his employment relevant to Plaintiff's

claims. As a public employee acting within the scope of his employment, Speth is immune from

individual liability for the claim raised in Count VI and is entitled to summary judgment as a

matter of law. *See Maraj v. Massachusetts*, 836 F. Supp. 2d 17, 31 (D. Mass. 2011) ("[T]he

MTCA categorically protects public employees acting within the scope of their employment

from liability for 'personal injury or death' caused by their individual negligence.") (quoting

Mass. Gen. Laws ch. 258, § 2)).

2.       Count VII: Negligence and Gross Negligence against the Town

a.       The Duty of Care

The Town maintains that it is entitled to summary judgment on Plaintiff's claims of

negligence and gross negligence because the police officers and Speth did not owe Sherilyn a

duty of care to prevent her suicide (Dkt. No. 127 at 13-14).

Claims of negligence and gross negligence require a plaintiff to prove that the defendant

owed the plaintiff a duty of care. *See Parsons v. Ameri,* 142 N.E.3d 628, 638 (Mass. App. Ct.

2020) ("'Gross negligence . . . is an act or omission respecting legal duty of an aggravated

character as distinguished from a mere failure to exercise ordinary care. . . . It is a heedless and

palpable violation of legal duty respecting the rights of others. . . .'") (quoting *Altman v.

Aronson*, 121 N.E. 505, 506 (Mass. 1919)); *Jupin v. Kask*, 849 N.E.2d 829, 834-35 (Mass. 2006)

("To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a

duty of reasonable care, that the defendant breached this duty, that damage resulted, and that

there was a causal relation between the breach of the duty and the damage."). "[T]he existence

of a duty is a question of law, and is thus an appropriate subject of summary judgment." *Jupin,*

849 N.E.2d at 835 (citing *Remy v. MacDonald,* 801 N.E.2d 260, 262 (Mass. 2004) ("If no such

duty exists, a claim of negligence cannot be brought.")).

     "Generally, there is no duty to prevent another from committing suicide." *Nguyen v.*

*Mass. Inst. of Tech.,* 96 N.E.3d 128, 139 (Mass. 2018). "We owe to everyone a duty not to act in

such a way as to put him or her at risk unreasonably, but ordinarily we do not owe others a duty

to take action to rescue or protect them from conditions we have not created." *Cremins v.*

*Clancy*, 612 N.E.2d 1183, 1187 (Mass. 1993) (O'Connor, J., concurring). An exception to this

general rule may arise where there is a special relationship between an actor and another. *See*

*Nguyen,* 96 N.E.3d at 140 ("'[a]n actor in a special relationship with another owes the other a

duty of reasonable care with regard to risks that arise within the scope of the relationship.'")

(alteration in original) (quoting RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL

AND EMOTIONAL HARM § 40(a) (AM. LAW INST. 2012)); *see also* RESTATEMENT (THIRD) OF

TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 40(b) (listing special relationships

giving rise to the duty provided in subsection (a)). Relationships that the Supreme Judicial Court

has recognized as those that may give rise to a duty to take reasonable steps to prevent suicide

are those that "have a custodial quality, involve a form of dependency or protection, and are of

[somewhat] long[] duration . . . ." *Bonafini v. G6 Hosp. Prop., LLC,* 194 N.E.3d 234, 237 (Mass.

App. Ct. 2022) (citing *Nguyen,* 96 N.E.3d at 142 (university and student); *McNamara,* 546

N.E.2d at 146 (hospital and institutionalized patient); *Slaven v. City of Salem,* 438 N.E.2d 348,

349-50 (Mass. 1982) (jailer and person in custody)).

     Plaintiff does not identify an applicable duty of care or any legal authority that would

support a jury finding that Speth or Marley had a special relationship with Sherilyn that gave rise

to a duty on their part to prevent her from committing suicide. Sherilyn was not in custody or

under an officer's control on November 23, 2019.  There is no evidence that Sherilyn knew

Marley or Speth or had prior interactions with either of them that could have caused or

contributed to her intention to kill herself.  Without a special relationship between Sherilyn and

Speth or Sherilyn and Marley, they did not owe her a duty to prevent her suicide.  *See Nguyen,*

96 N.E.3d at 139; *Bonafini* 194 N.E.3d at 237.  In these circumstances, as a matter of law, the

Town cannot be found to be negligent or grossly negligent based on the action or inaction of its

employees.  *See Parsons,* 142 N.E.3d at 638; *Jupin,* 849 N.E.2d at 835.

       b.     Municipal immunity under the MTCA

Even if Speth and Marley had a duty to intervene to prevent Sherilyn's suicide, the Town

argues that it is shielded from liability under the MTCA's "exceptions to [the] general waiver of

sovereign immunity" found in Mass. Gen. Laws ch. 258, § 10(j).  *Cormier v. City of Lynn,* 91

N.E.3d 662, 665 (Mass. 2018).  The Town further maintains that the exceptions to the § 10(j)

immunity bar do not apply.

  Section 10(j) bars:

> any claim based on an act or failure to act to prevent or diminish the harmful
> consequences of a condition or situation, including the violent or tortious conduct
> of a third person, which is not originally caused by the public employer or any
> other person acting on behalf of the public employer.

Mass. Gen. Laws ch. 258, § 10(j).  The provision "'which was intended to provide some

substantial measure of immunity from tort liability' to public employers, eliminates government

liability for a public employer's act or failure to act to prevent harm from the wrongful conduct

of a third party *unless* the condition or situation was '*originally caused*' by the public employer."

*Cormier,* 91 N.E.3d at 666 (quoting *Brum v. Dartmouth*, 704 N.E.2d 1147, 1153, 1154 (Mass.

1999)).  "For a public employer's conduct to constitute an 'original cause' the public employer

must have engaged in an 'affirmative act (not a failure to act)' that 'materially contributed to

creating the specific "condition or situation" that resulted in the harm.'" *Hankey v. Town of Concord-Carlisle*, 136 F. Supp. 3d 52, 75–76 (D. Mass. 2015) (quoting *Kent v. Commonwealth*, 771 N.E.2d 770, 775–76 (Mass. 2002)); *see also Brum*, 704 N.E.2d at 1155 ("[T]he principal purpose of § 10(j) is to preclude liability for failure to prevent or diminish harm, including harm brought about by the wrongful act of a third party.").

Plaintiff alleges that the § 10(j) exemption does not apply because Defendants engaged in "a series of affirmative acts . . . that actively prevented assistance from being rendered to [Sherilyn]" (Dkt. No. 139 at 15). Plaintiff points to Speth's request for an officer to call him for additional information when he dispatched them to Sherilyn's apartment (DSOF ¶¶ 5, 6, 7; Pl. Resp. DSOF ¶¶ 5, 6, 7). In addition, Marley told Bencivenga to stand by, called Nutting, and, a reasonable jury could find, persuaded Hamilton to withdraw his request for a well-being check (Dkt. No. 128-1 ¶¶ 34, 39, 40, 53-56; Dkt. No. 139 at 15). However, "'in order that a claim not be barred by § 10(j), the claim must involve "*something more* than the pure failure to alleviate a private harm" and . . . to be successful a claimant must show "*some* involvement of a public employee in creating the initial injury-causing scenario, not simply a failure to respond adequately after it arises."'" *Ward v. City of Boston*, 367 F. Supp. 2d 7, 15 (D. Mass. 2005) (alteration in original) (quoting *Armstrong v. Lamy,* 938 F. Supp. 1018, 1043 (D. Mass. 1996)). There is no evidence that Speth or Marley or any other Town employee "set in motion a chain of events that caused [Sherilyn's suicidal] state of mind." *Paradis v. Frost*, 218 N.E.3d 664, 671 n.6 (Mass. App. Ct. 2023). *See Jacome v. Commonwealth,* 778 N.E.2d 976, 982 (Mass. App. Ct. 2002) ("[T]he Commonwealth did not originally cause the condition or situation which brought about the harm, and thus was immune from suit for the loss."). Rather, Sherilyn's suicide "was the result of [her] own state of mind . . . ." *Paradis,* 218 N.E.3d at 670. *See McCarthy v. City of*

*Waltham,* 924 N.E.2d 316, 322 (Mass. App. Ct. 2010) ("[T]here can be no serious question that

the original cause of harm in James's taking of his own life [shortly after being released from

protective custody] was his suicidal frame of mind . . . ."). *Compare Doe I v. City of*

*Northampton*, 659 F. Supp. 3d 122, 135 (D. Mass. 2023) (section 10(j) did not bar liability

because "[d]efendants' actions alone were the original cause of the separate distress [the

plaintiff] says she suffered."). Consequently, the Town is exempt from liability under § 10(j)

Plaintiff argues that, even if the Town qualifies for immunity under § 10(j), it should be

held liable under either of two exceptions to that provision of the MTCA (Dkt. No. 139 at 16-

17). Section 10(j)(1) states that public employers are not exempt from:

> any claim based upon explicit and specific assurances of safety or assistance,
> beyond general representations that investigation or assistance will be or has been
> undertaken, made to the direct victim or a member of his family or household by a
> public employee, provided that the injury resulted in part from reliance on those
> assurances. . . .

Mass. Gen. Laws ch. 258, § 10(j)(1). Plaintiff alleges that the § 10(j)(1) exception to a public

employer's immunity applies because "Speth's statement [to Hamilton] that officers would be

dispatched to [Sherilyn's] apartment constituted an assurance of safety or assistance . . . ." (Dkt.

No. 139 at 16). For its part, the Town argues that Speth's "general representation" to Hamilton

is insufficient to meet § 10(j)(1)'s requirements (Dkt. No. 127 at 15). The court agrees with the

Town.

> The exception to immunity contained in G.L. c. 258, § 10(j)(1), . . . requires that
> "explicit" and "specific" assurances of safety, beyond general representations, be
> made by an officer. The phrase "explicit and specific assurances" requires "a
> spoken or written assurance, not one implied from the conduct of the parties or
> the situation," and the "terms of the assurance must be definite, fixed, and free
> from ambiguity."

*Ariel v. Town of Kingston*, 867 N.E.2d 367, 370 (Mass. App. Ct. 2007) (quoting *Lawrence v.*

*Cambridge,* 664 N.E.2d 1, 3 (Mass. 1996)). Subsection 10(j)(1) applies "to the truly exceptional

case where direct and explicit assurances are given to a particular person quite apart from the normal carrying out of officials' routine duties . . . ." *Barnes v. Metro. Hous. Assistance Program,* 679 N.E.2d 545, 550 (Mass. 1997).  Speth's generic response to Hamilton's request for a well-being check is insufficient to impose municipal liability under § 10(j)(1).  *Compare Lawrence,* 664 N.E.2d at 4 (plaintiff's affidavit, alleging that police promised him protection "'when [he] closed the store at night'" for as long as specified individuals posed a danger to him, raised a genuine issue of material fact as to whether § 10(j)(1) applied) (alteration in original)).

Further, even if Speth's statement could be deemed an explicit and specific assurance of assistance, he made that assurance to Hamilton, not to Sherilyn.  Conceding that Speth's statement was not made to the direct victim or a member of her household or family as the statute requires, Plaintiff argues, without any supporting authority, that statements made to "those who are in a position to assist the individual who rely on the assurances of police officers" fall within the purview of § 10(j)(1) (Dkt. No. 139 at 16).  A similar argument was rejected in *Paradis*, 218 N.E.2d at 671, in which the court defined "household" as "'a group of people who dwell under the same roof,'" and held that the defendant's assurances to a suicide victim's girlfriend did not meet § 10(j)(1)'s requirements where there was no evidence that the victim and his girlfriend shared a dwelling.  *Id.* (quoting *Household,* Black's Law Dictionary (11th ed 2019)).  Hamilton was Sherilyn's friend.  He did not live with her or, so far as appears from the record, have access to the apartment she shared with Nutting.  There is no evidence that he was a member of her family or her household.  The § 10(j)(1) exception to § 10(j) does not apply in this case.

Subsection 10(j)(2) provides that a public employer is liable for "any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a

worse position than he was in before the intervention."  Mass. Gen. Laws ch. 258, § 10(j)(2).

*See Reid v. City of Boston,* 129 N.E.3d 867, 876 (Mass. App. Ct. 2019).  Plaintiff asserts that the

§ 10(j)(2) exception applies because "not having police respond immediately to one's residence

when there exists a known suicidal threat placed [Sherilyn] in a worse position then she was

before Speth delayed sending assistance or Marley affirmatively prevented assistance from

responding" (Dkt. No. 139 at 16-17).  This contention defies logic.

"'[I]ntervention' refers to an affirmative act on the part of the intervener."  *Stahr v.*

*Lincoln Sudbury Reg'l High Sch. Dist.,* 102 N.E.3d 995, 1001 (Mass. App. Ct. 2018)).  A failure

to act is not "intervention" under the subsection.  *See Paradis,* 218 N.E.3d at 672.  The police

officers' failure to respond to Sherilyn's apartment does not fall within the scope of the § 10(j)(2)

exemption.  Sherilyn killed herself following an argument with her fiancé.  Nothing that Speth

did caused injury to Sherilyn or placed her in a worse position than she was in before Hamilton

called for protective services.  The same is true as to Marley.  *See Serrell v. Franklin Cty.,* 713

N.E.2d 389, 393 (Mass. App. Ct. 1999).

Even if § 10(j) did not protect the Town from liability, the Town argues, it is immune

under Mass. Gen. Laws ch. 258, § 10(h) (Dkt. No. 127 at 16).  "The immunities provided by § 10

operate in the alternative; even if one immunity contains an exception that would permit a claim

to be brought, that claim is barred if any of the other immunities apply."  *Brum,* 704 N.E.2d at

1156.  *See Ariel,* 867 N.E.2d at 371 ("The various subsections of § 10 enumerate independent

bases for immunity from suit.  An exception to the immunity provided by any particular

subsection does not create an independent cause of action, but rather limits the immunity

afforded by the subsection.").

Under Mass. Gen. Laws ch. 258, § 10(h), the Town is exempt from liability for

> . . . failure to provide adequate police protection, prevent the commission of
> crimes, investigate, detect or solve crimes, identify or apprehend criminals or
> suspects, arrest or detain suspects, or enforce any law, but not including claims
> based upon the negligent operation of motor vehicles, negligent protection,
> supervision or care of persons in custody, or as otherwise provided in clause (1)
> of subparagraph (j).

Mass. Gen. Laws. ch. 258, § 10(h).  *See Reid*, 129 N.E.3d at 873 ("The exclusion in § 10(h) for

failure to provide adequate police protection is intended to exclude claims based on the 'failure

to investigate, detect crime, apprehend, arrest, and enforce the law.'") (quoting *Ford v. Town of

Grafton*, 693 N.E.2d 1047, 1054 (Mass. App. Ct. 1998)).  Because Plaintiff's claim is based on

Defendants' alleged failure to protect Sherilyn by responding to her residence (Dkt. No. 128-1 ¶¶

32, 33, 34, 50, 52, 63), even if Defendants were negligent, § 10(h) insulates the Town from

liability.  *See Ford,* 693 N.E.2d at 1053 (while the town might have been negligent in preventing

a third person from inflicting the plaintiff's injuries, it is not liable under Mass. Gen. Laws ch.

258, § 10(h)).  *Compare Reid,* 129 N.E.3d at 874 (subsection 10(h) did not bar municipal

liability where "the plaintiff's claim was based on the officers' affirmative actions that created a

harmful situation that did not previously exist.").  The immunity conferred by § 10(h) also

requires the court to grant summary judgment in favor of the Town on Count VII.  *See Brum,*

704 N.E.2d at 1156; *Ariel,* 867 N.E.2d at 371.

        For the foregoing reasons, the Town is entitled to summary judgment on Count VII.[4]

        3.        Count VIII:  Wrongful Death

---

[4] In Count VII, Plaintiff also alleges that the Town is liable under the MTCA for the negligent
hiring, training, and supervision of its police officers (Compl. ¶ 114).  Plaintiff has not identified
any facts that would support such a claim which therefore fails.  *See Salem v. Stoneham Police
Dep't*, Civil Action No. 22-CV-10350-AK, 2024 WL 4335454, at *12 (D. Mass. Sept. 27, 2024);
*Titus v. Town of Nantucket,* 840 F. Supp. 2d 404, 411 (D. Mass. 2011) (granting summary
judgment where plaintiff did not put forth any facts supporting her claim that the town was
negligent in the hiring, training, retraining, and supervision of police officers).

In Count VIII of the complaint, Plaintiff claims that the Town is liable for Sherilyn's wrongful death (Compl. ¶¶ 117-118).  The wrongful death statute, Mass. Gen. Laws ch. 229, § 2, provides in pertinent part:

> A person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted . . . shall be liable in damages . . . .

Mass. Gen. Laws ch. 229, § 2.  "[T]he elements of [a Massachusetts] wrongful death action based on negligence mirror those of an ordinary negligence claim." *GGNSC Admin. Servs., LLC v. Schrader,* 140 N.E.3d 397, 404 (Mass. 2020) (citing *Correa v. Schoeck*, 98 N.E.3d 191, 198 (Mass. 2018) ("To prevail in her wrongful death suit, [the plaintiff] must prove that the defendants were negligent.")).  A claim for negligence or gross negligence requires a plaintiff to establish that a defendant owed the decedent a duty of reasonable care.  As is set forth above, Plaintiff has not made that showing.  *See Parsons,* 142 N.E.3d at 638 (quoting *Altman,* 121 N.E. at 506); *Jupin,* 849 N.E.2d at 834.

Even if Defendants had a duty to exercise reasonable care, Plaintiff has not shown "that there was a causal relation between the breach of duty and the damage." *Jupin,* 849 N.E.2d at 834-35.  "'Suicide is generally considered an intervening act which breaks the causal connection between [a] negligent act and [a] death.'" *N. Shore Pharmacy Servs., Inc. v. Breslin Assoc. Consulting LLC,* Civil Action No. 02-11760-NG, 2004 WL 6001505, at *4 (D. Mass. June 22, 2004) (citation omitted).  *See Williams v. Kawasaki Motors Corp., U.S.A.*, Civil Action No. 16-30142-MGM, 2018 WL 6619746, at *4 (D. Mass. Dec. 18, 2018) ("Under Massachusetts law, 'suicide may be viewed as an independent intervening cause between a defendant's conduct and the decedent's death.'") (citation omitted).  The exceptions to this general rule apply when "(1) the defendant's negligence was the cause of the decedent's uncontrollable suicidal impulse; or (2)

21

the decedent was in the defendant's custody and the defendant had knowledge of the decedent's suicidal ideation." *Nelson v. Mass. Port Auth.*, 771 N.E.2d 209, 211–12 (Mass. App. Ct. 2002) (citations omitted).  Another session of this court identified as a third exception the situation that arises if "'the plaintiff can demonstrate that the defendant's intentional conduct caused severe emotional distress that was a substantial factor in bringing about the suicide.'" *N. Shore Pharmacy Servs., Inc.,* 2004 WL 6001505, at *4 (quoting *Collins v. Vill. of Woodridge,* 96 F. Supp. 2d 744, 756 (N.D. Ill. 2000)).  Neither Speth nor Marley had any interaction with Sherilyn before she died.  They did not cause or in any way contribute to her suicidal impulse, nor was she in their custody.  The Town is entitled to summary judgment on Count VIII.  Moreover, the MTCA applies to wrongful death actions.  *See, e.g., Doe v. City of Northampton,* 738 F. Supp. 3d 93, 104-05 (D. Mass. 2024).  For reasons set forth above, Plaintiff's wrongful death claim against the Town is barred by §§ 10(h) and 10(j) of the MTCA and does not fall within the exceptions in §§ 10(j)(1) and (2).

IV.    CONCLUSION

For the foregoing reasons, Defendant Frank Speth III's and the Town of Dalton's Motion for Summary Judgment (Dkt. No. 126) is granted as to all counts in the complaint against them.

Dated: March 25, 2025                        Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             U.S. MAGISTRATE JUDGE